# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PATRICK J. LAY,

      **Plaintiff,**       **Case No. 2:08-cv-1083**
                  **JUDGE GREGORY L. FROST**
  **v.**              **Magistrate Judge Terence P. Kemp**

**GROUP LONG TERM DISABILITY
INSURANCE FOR EMPLOYEES OF
COLUMBUS NEIGHBORHOOD HEALTH
CENTER, INC., et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Judgment on the Merits

("Defendants' Motion") (Doc. # 22), Plaintiff's Response in Opposition to Defendants' Motion

(Doc. # 27), Plaintiff's Motion for Judgment on the Administrative Record ("Plaintiff's Motion")

(Doc. # 23), and Defendants' Memorandum in Opposition to Plaintiff's Motion (Doc. # 26).  For

the reasons that follow, the Court **GRANTS in part and DENIES in part** Defendants' Motion

and **GRANTS in part and DENIES in part** Plaintiff's Motion.

### I.  Background

All of the information in this section is taken from the administrative record ("AR").

(Doc. # 21.)

Plaintiff Patrick J. Lay ("Lay") was the founding Chief Executive Officer ("CEO") of the

Columbus Neighborhood Health Center, Inc. ("CNHC"), a non-profit community health care

agency, beginning in 1998 and ending on May 31, 2006.  Effective December 1, 2005,

Defendant Lincoln National Life Insurance Company ("Lincoln") provided disability insurance

(the "Plan") to CNHC.  The parties agree that Lay  suffers from chronic and debilitating

fibromyalgia.  The dispute in this action focuses on the date upon which Lay's fibromyalgia

caused him to be disabled as that term is defined under the Plan.

**A.  Lay's Claim for Disability Benefits**

On February 22, 2007, Lay submitted a claim to the Plan for short term disability

benefits.  On the claim form, Lay indicated that he had been unable to work since May 31, 2006

due to his fibromyalgia.  Lay had resigned from his position at CNHC and May 31, 2006 is the

date Lay last attended work there.

By letter dated April 18, 2007, Lincoln advised Lay that it completed its initial review of

his application and requested that Lay submit a signed authorization form so that Lincoln could

obtain Lay's medical records.  On May 1, 2007, Lincoln advised Lay that it required additional

information, which Lay supplied on May 7, 2007.  Included in the additional information was a

supplementary statement in which Lay indicated that he could no longer perform the duties and

responsibilities as CEO at CNHC.  Lay listed the cause of his continuing disability as

fibromyalgia and stated he did "not expect at this time to be able to return to work."  (AR

207-211.)

On July 12, 2007, Lincoln advised Lay that he would be given until July 27, 2007 to

provide medical documentation from one of his treating physicians, Joseph Flood, M.D., FACR,

the physician who first diagnosed Lay with fibromyalgia.

On July 19, 2007, in a letter to Lay, Lincoln denied Lay's disability claim, stating: "After

a thorough review of the information we received, we have determined that you are not eligible

for benefits."  (AR at 122.)  In the letter, Lincoln stated that because Lay's employment ended on

May 31, 2006, Lay's insurance coverage under the Plan ended on midnight of that date. Lincoln explained that under the Plan, Lay was entitled to disability benefits if he became "totally disabled" while insured. Under the Plan, total disability is defined as the "inability, due to Sickness or Injury, to perform each of the Main Duties of your Own Occupation." *Id.* (emphasis in original). Lincoln determined that "[s]ince [Lay was] performing each of the main duties of [his] own occupation on 5/31/2006, [he was] not totally disabled while insured for this benefit." *Id.*

Lincoln continued in the letter to state that it had "received no information to indicate that [Lay was] unable to perform each of the Main Duties of [his] Own Occupation . . . [and thereby] meet the definition of Total Disability on or before 5/31/2006." (AR at 123) (emphasis in original). Lincoln explained that Lay's "occupation as a CEO is defined by the Department of Labor as being a sedentary functional demand occupation. . . . [which is defined as] sitting for six hours out of an eight-hour day, lifting no more than 10 lbs. occasionally (0-20 times a day), possible frequent lifting or (*sic*) small objects weighing less than 10 lbs." *Id.*

Lincoln concluded:

> To determine disability, we must evaluate medical documentation to determine if your condition precludes you from performing the main duties of your occupation. Medical documentation includes, but is not limited to, office and treatment records, testing results, therapy notes, consultation reports and operative reports. We requested medical documentation from 5/1/2006 to (*sic*) current date. The medical information submitted fails to support an inability to perform the material and substantial duties of your regular occupation as a CEO in the general work force at any time prior to 12:00 midnight on the date your employment termination (*sic*), 5/31/2006.

*Id.* Lincoln concluded the letter with information on Lay's appeal rights.

On July 27, 2007, Lincoln received the medical documentation from Dr. Flood.

**B. Lay's First Appeal**

By letter dated October 22, 2007, Lay requested an appeal of the benefits decision. Lay asserted in his appeal that the date of disability was earlier than the May 31, 2006 date that he listed on his disability application as the last day he was able to attend work. That is, Lay argued that although he was at work on and before the May 31, 2006, he was still disabled. According to Lay, he was disabled "in terms of no longer being able to perform the duties of CEO of CNHC on or about August 2004," over one and one-half years before he ended his employment. (AR at 58.) Lay explained that in August 2005, he attempted to submit a resignation to become effective at the latest December 15, 2005. CNHC, however, asked him to continue his employment until his contract expired on May 31, 2006, so that it would have more time to find a replacement for him. Lay agreed to do so, "although [his] medical condition continued to worsen." (AR at 62.)

In the appeal Lay also included medical records from two additional treating physicians. On November 14, 2007, Lay forwarded to Lincoln letters from two of his former coworkers, which discussed their observation of Lay's worsening condition and his inability to perform the major tasks of his employment prior to his final day at work.

By letter dated December 14, 2007, Lincoln advised Lay that its original denial of benefits would be upheld. Lincoln reiterated that Lay's coverage terminated at midnight on May 31, 2006. Lincoln explained that because Lay was able to perform the main duties of his job before his coverage ended at midnight on May 31, 2006, Lay did not become disabled while covered under the Plan, and therefore was not entitled to disability benefits under the Plan.

To support its conclusion that Lay was not disabled while covered under the Plan,

Lincoln summarized the medical documentation it reviewed and indicated that it reflected that Lay was initially diagnosed with fibromyalgia in 2001 and that since that time, his treatment regimen consisted primarily of medication and a CPAP machine for sleep apnea. Lincoln further noted that, although Lay complained of concentration problems, short term memory lapses and other cognitive disorders, it concluded that there was no objective finding to document any loss of function prior to midnight of his final day of work, May 31, 2006. Lincoln concluded that Lay was performing the main duties of his occupation prior to midnight on May 31, 2006.

Also to support its conclusion that Lay was not disabled while covered under the Plan, Lincoln indicated, as it had in its first denial, that the occupation of CEO was a sedentary demand occupation and that Lay's medical limitations would not prevent him from performing them.

Lincoln concluded its letter with information on Lay's appeal rights.

## C. Lay's Second Appeal

Lay obtained counsel to represent him in his next appeal, which he made on January 30, 2008. In the appeal letter, Lay's counsel asserted that by "late 2005" Lay was unable to perform the important functions of his job and began taking a substantial amount of time off from work. Counsel asserted that, although Lay could no longer fulfill his duties or responsibilities, Lay was asked by his employer to remain in his position until a successor CEO could be hired. He agreed to do so and thereafter, Lay's "duties were largely distributed to other staff members and he became, for all intents and purposes, a figure head." (AR at 260.) Additional documents accompanied this letter, including letters, affidavits and updated medical records.

In the appeal letter, Lay's counsel also requested Lincoln to provide his office with Plan

documents, medical records, and any other information used in adjudicating Lay's claim for benefits.

To review Lay's appeal, Lincoln hired a board-certified rheumatologist, Ara H. Dikranian, M.D., for an independent medical review. Dr. Dikranian reviewed Lay's medical file and answered six questions posed to him by Lincoln. The fourth question asked:

> Based upon the medical evidence, did the claimant have any physical or functional impairment(s) that would have prevented performance of the essential tasks and duties of a sedentary level occupation as of 06/01/2006 to current date?

(AR at 22.) Dr. Dikranian opined that Lay did have such an impairment:

> Based upon the medical evidence, the claimant did have a functional impairment that would have prevented performance of the essential tasks and duties of a sedentary level occupation as of 06/01/06 to current date. Fatigue would prevent the claimant from working a full eight-hour day but would not preclude the claimant from working in a sedentary level occupation on a part-time basis.

*Id.* In the report, the doctor indicated that Lay's fibromyalgia symptoms began three months after an upper cervical spinal fusion surgery performed in November 2000 and that it was first diagnosed in August 2001. Dr. Dikranian stated that the "diagnosis has been confirmed by multiple physicians, and has been characterized by chronic widespread pain, fatigue and depression." (AR at 14.)

After receipt of Dr. Dikranian's independent medical examination, Lincoln requested that the doctor opine on whether Lay's fibromyalgia caused him to be disabled prior to May 31, 2006 and, if it did, to indicate the "earliest date" Lay was "unable to perform the main duties of his occupation full time." (AR at 254.) Dr. Dikranian opined that the earliest date Lay was unable to perform the main duties of his occupation full time was August 22, 2005, "when the claimant intended to resign from his occupation." (AR at 255.)

In a letter to Lay dated July 2, 2008, Lincoln upheld its previous denial of disability benefits; however, Lincoln did not uphold its previous reasons for the denial. In this letter, Lincoln indicated that it now determined that Lay's fibromyalgia rendered him unable to perform the main duties of his occupation prior to May 31, 2006, the last day of Lay's employment, *i.e.*, Lay was disabled as that term is defined under the Plan before his last day of employment. Lincoln indicated to Lay that it determined that he "was unable to perform the main duties of his occupation beginning on 8/22/2005" – *before* the Plan took effect. Lincoln explained that the Plan took effect on December 1, 2005 and that in order to be covered under the Plan, Lay was required to be "actively at work" on that date. The Plan defined "actively at work" as the "performance of all main duties of his or her own occupation for the regularly scheduled number of hours." (AR at 269.) Lincoln explained that, because Lay was unable to perform the main duties of his occupation as of August 22, 2005, he was not actively at work on December 1, 2005 when the Plan took effect, and, was therefore not covered under the Plan.

Lincoln informed Lay that he had exhausted all appeal rights under the Plan and that it was closing his file.

On November 14, 2008, Lay filed this action, bringing claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq*. ("ERISA") and under federal common law. Lay asks this Court to reverse Lincoln's decision to deny his disability benefits and to award him benefits retroactive to June 1, 2006. Alternatively, Lay asks for the Court to remand this action with instructions for an appropriate review or to equitably estop Lincoln from denying his benefits on the basis of lack of coverage because Lincoln accepted premium payments for Lay's coverage and indicated in its billing that Lay was covered. Also,

Lay asks that if this Court determines that he is not entitled to disability benefits because he was not actively at work when the Plan became effective, the Court consider whether he is still entitled to long term disability coverage under the policy's "prior insurance credit" provision. Finally, Lay requests that Lincoln be sanctioned for its wilful failure to provide him copies of certain requested documents from the Plan.

## II.  Standard of Review

Lay's entitlement to benefits claim is governed by ERISA.  "ERISA provides that insurance companies 'shall discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and [] for the exclusive purpose of [] providing benefits to participants and their beneficiaries . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter . . .' "  *Ruchow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 865 (6th Cir. 2007) (alterations in original) (citing 29 U.S.C. § 1104(a)(1)).

It is well-settled that in reviewing an administrator's decision to deny benefits, the district court reviews the record *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  "If a plan affords such discretion to an administrator or fiduciary, [the court] review[s] the denial of benefits only to determine if it was 'arbitrary and capricious,' *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991), and will uphold his decision if it is 'rational in light of the plan's provisions,' *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (quotation

omitted)." *Id.* at 456-57.   Under this deferential standard of review, the benefits decision will be upheld if " 'it is possible to offer a reasoned explanation, based on the evidence, for the particular outcome.' " *Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 561-62 (6th Cir. 2007) (quoting *Davis v. Kentucky Fin.*, 887 F.2d 689, 693 (6th Cir. 1989)).  *See also Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 392 (6th Cir. 2009) ("Under this standard, we uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.' " *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008) (quoting *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006)).

Here, the parties disagree as to which standard applies, the *de novo* standard or the arbitrary and capricious standard.  After reviewing the Plan, the Court concludes that it clearly vests discretionary authority with Lincoln, who is the plan administrator.  The Plan vested Lincoln with discretionary authority to manage the Plan, interpret its provisions, administer claims, and resolve questions arising under the Plan.  The authority included the right to "establish administrative procedures, determine eligibility and resolve claims questions."  (AR at 283.)  Consequently, the deferential arbitrary and capricious standard of review applies to the instant action.

This Court must "also take into account, however, the fact that [Lincoln] is acting under a conflict of interest[1] because it both funds and administers the plan." *Marks*, 342 F.3d at 457

---

[1]Lincoln makes no argument in opposition to Lay's contention that it is operating under a conflict of interest.  It appears that this is because, although Lincoln is acting as the *de facto* administrator the Plan documents do not designate Lincoln as the administrator, as is addressed in Section D, *infra*.  However, for the purpose of the conflict of interest analysis, it is clear that Lincoln operates under a potential conflict of interest because it bears all of the risk of paying claims and also appoints the body designated as the final arbiter of such claims.

(apparent conflict when the plan administrator who decides whether an employee is eligible for benefits is also obligated to pay those benefits) (citing *Bruch*, 489 U.S. at 115 and *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n.4. (6th Cir. 2000) (recognizing a potential for self-interested decisionmaking "where, as here, the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims")). *See also Glenn*, 461 F.3d at 666 (finding that the district court did not give appropriate consideration by the district court because its analysis "does not include any discussion of the role that MetLife's conflict of interest may have played in its decision nor appear to give that conflict any weight").

### III. Analysis

Both parties move for judgment on the administrative record. As previously stated, Lay also requests equitable relief under federal common law and under ERISA and he requests penalties for Lincoln's alleged willful failure to provide him with copies of the long term disability summary plan description.

### A. Judgment on the Administrative Record and Equitable Estoppel

Lay requests that this Court overturn Lincoln's decision to deny Lay disability benefits and to award benefits to him under ERISA, 29 U.S.C. § 1132(a)(1)(B). Lay argues that Lincoln's failure to allow Lay to appeal its final determination was arbitrary and capricious and violative of ERISA and that Lincoln's decision that Lay was not actively at work at the time the Plan went into effect was arbitrary and capricious. This Court agrees.

First, as its final reason for upholding its denial of Lay's disability benefit claim, Lincoln actually reversed its own prior decisions, espoused a completely new reason for its denial, and

then failed to allow Lay any opportunity to address this new decision. This failure to allow Lay the opportunity to appeal Lincoln's decision is not rational in light of the plan's provisions, which provide Lay the ability to appeal the denial of disability benefits. It also violates ERISA, which requires an administrator to provide a "reasonable opportunity to appeal an adverse benefit determination." 29 C.F.R. 2560.503-1(h)(1-2).

Lincoln first denied Lay's claim because it concluded that Lay was not disabled prior to his last day of work, May 31, 2006, and was therefore not covered by the Plan, which expired upon his last day of work. Lincoln upheld this denial, and the reasons for it, twice. Then in its last review, Lincoln determined that Lay *was* disabled prior to his last day of work. Not only did Lincoln determine that Lay was disabled prior to May 31, 2006, it determined that, despite his continued employment, he was disabled every day from August 22, 2005 through May 31, 2006, and at no time during that period was Lay not disabled. The Plan went into effect on December 1, 2005, and for coverage to apply, Lay was required to be actively at work on that date. Although Lay was at work throughout that period of time, Lincoln determined that Lay was not actively at work, *i.e.*, performing the main duties of his position, at any time from August 22, 2005 through May 31, 2006. Lincoln then arbitrarily and capriciously, and in violation of ERISA, denied Lay the opportunity to appeal its decision.

Second, the Court concludes that there is no principled reasoning to Lincoln's determination that Lay was unable to perform the main duties of his occupation full time continuously from August 22, 2005 through May 31, 2006. After Lincoln received Dr. Dikranian's conclusion opining that Lay was disabled as of June 1, 2006, Lincoln requested that Dr. Dikranian provide it with his opinion as to when Lay became disabled. Dr. Dikranian opined

that, although Lay first began to suffer from fibromyalgia and accompanying fatigue in 2000, "neither the fibromyalgia nor the fatigue became disabling until 8/22/05, when the claimant intended to resign from his occupation." (AR at 255.) The doctor then concluded that the medical records indicate that "the earliest date he was unable to perform the main duties of his occupation full time is 8/22/05." *Id.* However, Dr. Dikranian's reliance on the August 22, 2005 as the date that Lay intended to resign is error. The record shows that on August 22, 2005 Lay submitted his resignation letter requesting to be relieved from his duties on or by December 15, 2005–not the date in August that Lay submitted the resignation.

Moreover, if Lay was indeed incapable of performing the main duties of his occupation on August 22, 2005, there is no evidence that Lay continued to be unable to do so continuously from that date through his last date of employment. There is ample evidence in the record to show that the effect of Lay's fibromyalgia exhibited intermittent severity, preventing him from working for a time and then subsiding and not preventing him from working at a subsequent time. Indeed, it was Lay, in his capacity as CEO, who executed the contractual agreement between Lincoln and CNCH that provided for the Plan to cover CNCH employees. It is both disingenuous and inconsistent for Lincoln to rely on the binding quality of Lay's execution of the insurance contract in his active capacity as CEO of CNHC and then deny him coverage on the basis that he was not "actively at work" when that contract was executed.

For the reasons stated above, the Court easily concludes that Lincoln's decision to deny Lay's disability benefits was arbitrary and capricious. In addition, Lincoln's actions throughout the administrative review process also tend to show a bias on its part that this Court considers significant. For example, during Lincoln's review of Lay's first appeal, Lincoln provided a date

by which medical documents needed to be provided from one of Lay's medical providers, the physician who first diagnosed Lay with fibromyalgia, and then failed to wait to issue its decision until after that date. In its explanation for upholding the denial of benefits, Lincoln stated that the "medical information submitted fails to support an inability to perform the material and substantial duties of your regular occupation." (AR at 123.) Lincoln did not have the documents to review when it made its decision. And, the documents were received on the date that Lincoln required them.

The Court also notes that several times Lincoln, without explanation for its action, selectively relied on information that tended to bolster its conclusion. For example, in Lincoln's first review of Lay's claim, Lincoln based its entire decision that Lay was actively at work when his coverage expired on information from Lay because that bolstered Lincoln's argument that Lay did not become disabled while he was insured. Lincoln does not indicate why it chose to ignore this same evidence on its final review and rely, instead, on other evidence. Further, Lincoln first indicated that although Lay was initially diagnosed with fibromyalgia in 2001, "since that time, Lay's treatment regimen consisted primarily of medication and a CPAP machine for sleep apnea." (AP at 41.) Lincoln did not even address the medical records regarding Lay's fibromyalgia and fatigue that Dr. Dikranian found was "confirmed by multiple physicians, and has been characterized by chronic widespread pain, fatigue and depression." (AR at 14.) The apparent explanation is that Lincoln selectively chose to not rely on certain records because that information ran counter to Lincoln's predetermined decision to deny benefits to Lay.

Also in its denial of Lay's first appeal, Lincoln states that Lay "had similar symptoms

dating back several years, and the evidence fails to document a significant change or worsening of your medical status as of May 31, 2006." (AR at 41.) But there was evidence that documents a significant change or worsening of Lay's status that Lincoln simply ignored, including medical records form Dr. Petrovich and letters from Lay's co-workers. It is not only that Lincoln failed to address evidence contrary to its conclusion, indicating that it was nonexistent, but also that Lincoln subsequently took this same evidence and relied upon it when it supported its changed position. This type of selective reliance certainly indicates bias on Lincoln's part and has, in itself, been found to show that a decision was arbitrary and capricious. *See Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (the court found an administrator's actions to be arbitrary and capricious when the administrator was selective in its review of the claimant's medical evidence).

In sum, Lincoln's final decision to uphold its denial of disability benefits to Lay was arbitrary and capricious because it disallowed Lay the opportunity to appeal the decision which was not rational in light of the plan's provisions and violative of ERISA. *See Borda*, 138 F.3d at 1066. Further, the record reflects that Lincoln's determination that Lay was unable to perform the main duties of his occupation full time continuously from August 22, 2005 through May 31, 2006, was not the result of a deliberate, principled reasoning process. *See Glenn*, 461 F.3d at 666. The decision also does not appear to have been made "solely in the interest of the participants and beneficiaries and [] for the exclusive purpose of [] providing benefits to participants" as required by ERISA. 29 U.S.C. § 1104(a)(1). Finally, it is evident that Lincoln's conflict of interest arising from its dual role as administrator and insurer of the Plan interfered with an objective review of the record. *See Emerson Elec. Co.*, 202 F.3d at 847 n.4.

14

Consequently, the Court hereby **REVERSES** Lincoln's decision to deny Lay's disability claim and **DIRECTS** Lincoln to **GRANT** Lay's short-term disability benefits, which under the terms of the Plan roll-over to long term disability benefits, retroactive to June 1, 2006.

Because of this determination, the Court finds it unnecessary to decide Lay's claim that he was entitled to the prior insurance credit or whether Lincoln should be equitably estopped from denying Lay's claim for benefits.

## C. Breach of Fiduciary Duty Under ERISA

Lay brings a claim for relief under ERISA, 29 U.S.C. § 1132(a)(3), alleging that Lincoln's breached its ERISA imposed fiduciary duties. This claim, however, does not state a claim upon which relief can be granted. That is, ERISA provides that a participant or beneficiary may bring a civil action to recover benefits, enforce rights under a plan or obtain other equitable relief. 29 U.S.C. § 1132(a)(3). However, the Supreme Court "clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). Therefore, where Section 1132 provides a remedy for an alleged injury that allows a participant or beneficiary to challenge a denial of benefits, "he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3)." *Id.* at 614-15. To permit otherwise would allow "ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty." *Id.* at 616.

There are, however, "some circumstances an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(B) and § 1132(a)(3)." *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007) (citing *Hill v. Blue Cross and Blue Shield of*

*Mich.*, 409 F.3d 710 (6th Cir. 2005)).  The Sixth Circuit has permitted such simultaneous claims where a benefits award would not provide complete relief to the claimant or where the claim could not have been characterized as a denial of benefits claim.  *See Hill*, 409 F.3d at 717-18; *Gore*, 477 F.3d at 841-42.

In the case *sub judice*, there is nothing before the Court to suggest that Lay's breach of fiduciary duty claim is anything other than an alternative articulation of Lay's claim for denial of benefits.  Thus, Lay's claim for breach of fiduciary duty is without merit.  *See Wilkins, Inc.*, 150 F.3d at 614-16.  Accordingly, the Court **DENIES** Plaintiff's Motion as it relates to this claim for relief and **GRANTS** Defendants' Motion as to this claim.

## D.  Failure to Provide Documents Under ERISA

Lay  requests that the Court order Lincoln to pay a statutory penalty for its failure to provide requested Plan documents.  Pursuant to 29 USC § 1024(b)(4), the plan administrator is required to furnish a copy of the latest policy upon the request of a party.  If the administrator fails to comply, then sanctions will be applied in the amount of $100 per day from the date of "such failure or refusal."  29 U.S.C. §1132(c)(1).  The record reflects that on February 27, 2008, Lay notified Lincoln that he was requesting copies of the summary plan description and all other information related to Lay's long term disability policy.  (R. 262)  It is not disputed that Lay was not provided with the documents until the administrative record was provided by Lincoln on March 2, 2009.  Lay requests that Lincoln be ordered to pay the appropriate penalty calculated from February 27, 2008 until March 2, 2009.

In opposition, Lincoln point out that ERISA defines "administrator" as:

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designed and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

Lincoln then argues that, the documents under which the Plan is operated include the Policy, the Long Term Disability Policy and the summary plan descriptions of each. Lincoln argues that the Policy does not identify the plan administrator or the plan sponsor but that the summary plan description of the Policy, however, identifies the plan administrator as CNHC. Lincoln concludes that, because it is not the named plan administrator, it cannot be subject to ERISA penalties for the alleged failure to provide Lay with copies of the Long Term Disability summary plan description. *See also Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002) (the Sixth Circuit has repeatedly held "that only plan administrators are liable for statutory penalties under § 1132(c)").

With regard to Lincoln's argument. The Court first notes that the summary plan description on which Lincoln relies is not part of the administrative record. Also, the Court notes that regardless of the round-about way Lincoln gets to naming CNHC as the plan administrator, the administration of the Plan is not done by CNCH but instead by Lincoln as the record before this Court makes clear. Moreover, in its Motion for Judgment on the Pleadings, Lincoln states that it is the administrator of the Plan. That being said, this Court is unable to hold Lincoln liable for statutory damages for its failure to provide Lay with the Plan documents he requested because Lincoln was not designated by the Plan as its administrator or its sponsor as defined under 29 U.S.C. § 1002(16). *See e.g., Krauss v Oxford Health Plans, Inc.*, 517 F3d

614, 631 (2d Cir. 2008) (since plans were not specifically designated under policy's terms under 29 U.S.C. § 1002(16), it was not plan "administrator," and participants could not recover statutory damages for nondisclosure of certain information).

Accordingly, the Court **DENIES** Plaintiff's Motion as it relates to this claim for relief and **GRANTS** Defendants' Motion as to this claim.

### IV. Conclusion

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** Defendants' Motion (Doc. # 22) and **GRANTS in part and DENIES in part** Plaintiff's Motion (Doc. # 23). Specifically, the Court **DENIES** Defendants' Motion as it relates to Lay's claim for entitlement to disability benefits and **GRANTS** Plaintiff's Motion in that regard. Lincoln's decision denying Lay disability benefits is hereby **REVERSED** and Lincoln is **DIRECTED** to **GRANT** Lay's short-term disability benefits, which under the terms of the Plan roll-over to long term disability benefits, retroactive to June 1, 2006. The Court **DENIES** Plaintiff's Motion as it relates to Lay's claims for statutory penalties and for breach of fiduciary duty and **GRANTS** Defendants' Motion on those two claims. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**


**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**